UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT LANCASTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19-cv-02926-MTS |
| | ) | |
| CATERPILLAR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This case is before the Court on Defendant Caterpillar, Inc.'s Motion for Summary Judgment. The Motion is fully briefed and ready for adjudication. Because of the reasons explained herein, the Court will grant the Motion in part and deny it in part.

**I.    Background**

On October 2, 2018, Plaintiff stood near the rails atop an 854K Wheel Dozer ("854K") that Caterpillar designed, manufactured, marketed, and sold to his employer. Doc. [41] ¶¶ 2, 5, 6. As part of the rail system, an emergency egress gate ("gate") made up part of the rails. *Id.* ¶ 6. A spring-loaded pin, affixed to the rail adjacent to the gate, meets a latch plate on the gate itself to keep the gate closed. *Id.* For the gate to open, generally one must pull the pin up against the tension of the spring so that the pin clears the top of the latch plate. *Id.* ¶ 7. Thinking the gate was just another immobile rail, Plaintiff leaned on it, and the gate "popped open." *Id.* ¶¶ 9, 60. Plaintiff fell from the 854K onto the ground below. *Id.*

Plaintiff's expert[1] has opined that the gate through which Plaintiff fell was defective because "it was not marked to differentiate it from the rest of the fixed safety railing or to

---

[1] Also pending before the Court is Defendant's Motion to Exclude Plaintiff's expert's testimony, Doc. [25]. The Court finds that Plaintiff's expert possesses sufficient qualifications and meets the admissibility requirements of Fed.

represent a means of emergency egress." *Id.* ¶ 12. Plaintiff's expert further asserted that the gate's latch mechanism was defective for three reasons. *Id.* ¶ 13. First, "a person in front of the gate could not see if the gate was properly latched without viewing it from outside of the gate." Second, the latch system "was vertically dependent" though the gate "was not vertically fixed." *Id.* And, lastly, the gate "could be falsely latched." *Id.*

Plaintiff brought three claims against Defendant stemming from his fall and the alleged defects of the 854K's gate and latch mechanism. He asserts a strict liability defective design claim, a strict liability manufacturing defect claim, and a negligence claim. Defendant has moved for summary judgment on all the claims. Defendant argues that uncontroverted evidence shows the gate and latching mechanism at issue were damaged after Plaintiff sold the 854K but before Plaintiff's accident. Doc. [22] ¶ 3. As such, Defendant argues, Plaintiff has not proven the existence of a design or manufacturing defect or that any as-sold defect caused Plaintiff's injuries. *Id.* ¶¶ 4, 6.

## II.   Standard

"A court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). "The movant bears the initial responsibility of informing the district court of the basis for its motion and must identify the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact." *Id.* at 996; *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

---

R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). For those reasons, the Court will deny that Motion.

must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"Only after the moving party fulfills its duty is the nonmoving party obliged to proffer evidence that contradicts the moving party's showing and that proves the existence of a genuine issue of material fact." *Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997) (internal quotations omitted); *accord Leffall v. City of Elsberry*, No. 4:15-cv-398-SPM, 2016 WL 2866422, at *2 (E.D. Mo. May 17, 2016) ("If the moving party meets this initial burden, the nonmoving party must then set forth affirmative evidence from which a jury might return a verdict in his or her favor."). The Court must "view the facts and draw reasonable inferences in the light most favorable to the" nonmoving party if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007) (internal quotations omitted). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007).

**III.   Discussion**

    *a.   Strict Liability, Design Defect*

In a design defect case under Missouri law, a plaintiff must show that: (1) the product was in a "defective condition unreasonably dangerous when put to a reasonably anticipated use," (2) that the product "was used in a manner reasonably anticipated," and (3) that "plaintiff was damaged as a direct result of such defective condition as existed when the product was sold." *Johnson v. Auto Handling Corp.*, 523 S.W.3d 452, 466 (Mo. banc 2017) (alteration omitted) (quoting Mo. Approved Jury Instr. (Civ.) 25.04) (8th ed.)). "The focus is on the product and its condition when sold." *Johnson*, 523 S.W.3d at 466.

The "heart and soul" of a strict liability design defect case is "unreasonable danger and causation." *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 792 (Mo. Ct. App. 2008) (quoting *Nesselrode v. Exec. Beechcraft, Inc.*, 707 S.W.2d 371, 376 (Mo. banc 1986)). A plaintiff proves causation in a product defect case "by providing competent expert testimony or additional evidence that the defendant's product was a substantial factor in causing the injury." *Mathes v. Sher Express, LLC*, 200 S.W.3d 97, 103 (Mo. Ct. App. 2006). "Evidence of causation must be based on probative facts not on mere speculation or conjecture," but a plaintiff need not "exclude all other possible causes" or "prove an absolutely positive causal connection." *Kircher v. Purina Mills, Inc.*, 775 S.W.2d 115, 117 (Mo. banc 1989). A plaintiff who relies on circumstantial evidence "has the burden of establishing circumstances from which the claim may be inferred without resort to conjecture and speculation." *Peters v. Gen. Motors Corp.*, 200 S.W.3d 1, 18 (Mo. Ct. App. 2006). The mere fact that "circumstantial evidence is consistent with the theory of causation advanced by plaintiffs is not enough." *Hills v. Ozark Border Elec. Coop.*, 710 S.W.2d 338, 342 (Mo. Ct. App. 1986).

To establish causation, Plaintiff relies heavily on his assertion that "no repair was done to the gate prior to his injury." Doc. [35] at 16; *accord* Doc. [33] ¶ 17. At best, that assertion is imprecise. Evidence in the record shows repairs were made to the 854K's handrails and guard rails. Defendant put forward a business record from August 2015 that shows the 854K at issue hit a pillar, which "knocked down" some of the rails. Docs. [30-5] & [30-6]. The bent rails were replaced with new ones, and the invoice Defendant provided notes the specific item number for each replaced guard rail and handrail. *Id.* Based on this information, Defendant's expert concluded that the rail adjacent to the gate was one of the rails that required replacement. Doc. [30-6]. The latch pin mechanism was affixed by a U-bolt to that adjoining rail, which

necessarily means replacing that rail required the latch pin mechanism to be removed and affixed to the new rail or a new latch pin mechanism to be affixed to the new rail. *Id.* Defendant's expert concluded and averred that "there is no doubt that the gate, hinges, and latch plate were damaged before [Plaintiff's] accident." *Id.*

Even viewing the evidence in the light most favorable to Plaintiff, he failed to create a genuine dispute of fact regarding this repair. Plaintiff asserts that his expert testified that the railings "showed no signs of repair or replacement." Doc. [33] ¶ 18. But his expert testified he "d[id]n't know" whether the rail had been replaced; he simply did not see signs it was replaced. Doc. [30-4] (82:10–18).[2] This scintilla of evidence is insufficient to create a genuine dispute. *See Anderson*, 477 U.S. at 252. And Plaintiff argues that Defendant's expert acknowledged in his deposition that the repair record at issue does not mention the word "gate," but that is of no significance. The repair record notates the specific pieces that were replaced by item number, and Defendant's expert determined that the replaced parts included the rail adjacent to the gate upon which the latch pin mechanism was affixed. Doc. [30-6].

Plaintiff's other argument regarding causation is just the occurrence of the event itself. He states that had the gate "not opened," he "would not have fallen and been injured." Doc. [35] at 15–16. Thus, Plaintiff argues, "[t]he fact the gate popped open when [he] leaned against it was the cause of his fall and injury." Doc. [35] at 16. But that misses the mark. No one disputes that Plaintiff's fall from or through the gate caused him injuries. Rather, Plaintiff must establish that a *defective design* of the gate caused his fall and injuries, which he has not done.

---

[2] Doc. [30-4] (82:10–18) (Q: "Do you know if that rail was original equipment or a replacement rail? A: "The post that [the pin mechanism] was attached to, is that what you mean by rail?" Q: "Yes." A: "No.  I saw no signs of a repair or of any replacement of any of the fixed posts or railing.  So I don't know, though, but I did not see signs of it being replaced.").

While Plaintiff's expert has opined that the design of the gate's latch system was defective for several reasons, he was unable to say whether those defects caused Plaintiff to fall. When asked "whether the incident would have occurred" if "the gate, hinges, latch plate, and latch pin were in the as designed and sold condition," he stated that he "couldn't say whether" Plaintiff's fall would have occurred.[3]  Doc. [41] ¶ 31.  It is undisputed that Plaintiff has "no direct knowledge" of a defect with the 854K and "no personal knowledge of the condition of the latch or the gate," other than he did not know it was a gate. *Id.* ¶¶ 10, 11. And as discussed, the uncontroverted evidence demonstrates that the latch mechanism was not in its as-sold condition. Even viewing the evidence in Plaintiff's most favorable light, he has provided only speculation and conjecture that a defective design *present at the time of sale* was a substantial factor in causing his injuries.

Plaintiff did testify that he would not have leaned against the gate "if he knew of its existence," Doc. [41] ¶ 61, and it is undisputed that the gate was not "marked to differentiate it from the rest of the fixed rail system," *id.* ¶ 63.  Plaintiff's expert contended that its indistinguishability made the gate defective.  *Id.*  But if the gate's indistinguishability was a substantial factor in causing Plaintiff's injuries, that does not establish a *design defect*.  For a design defect claim to succeed, the product must be "unreasonably dangerous without regard to whether a warning is given."  *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 757 (Mo. banc 2011); *accord Howard v. Bosch Thermotech. Corp.*, No. 4:17-cv-763-CDP, 2018 WL 2087259, at *2 (E.D. Mo. May 4, 2018) ("A claim alleging design defect involves a product that, by nature of its

---

[3] Asked individually regarding every defect, Plaintiff's expert likewise consistently stated or agreed he did not know whether the defects he proposed caused Plaintiff's injuries.  *See* Doc. [41] ¶ 32 ("d[id]n't know" whether "gate could have unlatched had [it] been in its as designed condition"); *id.* ¶ 34 ("d[id]n't know" whether location of latch system "caused or contributed to cause" of accident); *id.* ¶ 35 (saying it was "correct" that he "d[id]n't know" whether there was "causation" between the "vertically dependent" latch system design and Plaintiff's accident); *id.* ¶ 36 (answering that all the conditions "could have" "caused or contributed to cause" accident, but he "d[id]n't know").

design, is unreasonably dangerous, regardless of whether or not a warning is given."). "[D]esign defect and failure to warn theories constitute distinct theories aimed at protecting consumers from dangers that arise in different ways." *Moore*, 332 S.W.3d at 757. "Failure to warn claims are concerned with how a lack of warning about a product, and the user's resultant lack of knowledge about the product's dangers or safe use, may give rise to an unreasonable danger to the consumer." *Id.* Defendant's failure to warn Plaintiff of the gate or its presence, and his "resultant lack of knowledge about [its] dangers," does not make the design defective. *See id.*

Because Plaintiff offers only speculation and conjecture that a design defect present at the time of sale was a substantial factor in causing his injuries, summary judgment for Defendant on this claim is proper.

      b. *Strict Liability, Manufacturing Defect*

A manufacturing defect occurs when "something goes wrong in the manufacturing process and the product is not in its intended condition. The product is evaluated against the producers' own standards, and compared to like products." S*mith*, 275 S.W.3d at 791–92 (internal quotations omitted). Under Missouri law, strict liability for a manufacturing defect requires proof of the same elements as a strict liability design defect. *See* Mo. Approved Jury Instr. (Civ.) 25.04 (8th ed.) (noting instruction "is intended for use both in cases involving a manufacturing defect and in cases involving a design defect."). Plaintiff's claim for strict liability manufacturing defect fails for the same reason his strict liability defective design claim fails. Uncontroverted evidence in the record shows that repairs that necessarily implicated the latch were made to the 854K, and Plaintiff's expert was not able to show or establish that any

defect he proposed caused Plaintiff's injuries.[4]  Summary judgment for Defendant on this claim is likewise proper.

### c. Negligence

For negligence related to manufacture, design, or warnings as to a product, a plaintiff must show (1) that defendant designed or manufactured the product, (2) that "the product had a particular defect," (3) that "defendant failed to use ordinary care" to design the product "to be reasonably safe or adequately warn of the risk of harm," and (4) that "as a direct result of such failure," in one or more of the respects submitted in part three, "plaintiff sustained damage." *Johnson*, 523 S.W.3d at 466 (cleaned up); *see also* Mo. Approved Jury Instr. (Civ.) 25.09 (8th ed.).  "Negligence and strict liability theories of product liability are separate and distinct theories."  *Johnson*, 523 S.W.3d at 466.  Rejecting a plaintiff's strict liability product defect theory "does not require rejection of [a] plaintiff's claims of negligent design, manufacturing, or failure to warn."  *Id.*

Plaintiff has put forth evidence to meet every element on his negligence claim.  The first element is plainly met; Defendant does not argue it neither designed nor manufactured the product.  On the second element, Plaintiff's expert put forward the gate's lack of warning and three defects of the latch mechanism.  On the third element, whether Defendant failed to use ordinary care, the issue is foreseeability.  *Moore*, 332 S.W.3d at 765.  It was foreseeable and predictable that someone might lean on, or even stand on, the gate and safety rails.  *See, e.g.*, Doc. [30-4] at (92:18 93:4) (opining it was foreseeable).  The causation element again, however, poses problems for Plaintiff.  *See Bayes v. Biomet, Inc.*, No. 4:13-cv-00800-SRC, 2020 WL

---

[4] That the gate was indistinguishable from the rest of the safety rail is not relevant to this claim because the parties do not dispute that it was part of the 854K's standard design and not a manufacturing defect.

5095346, at *15 (E.D. Mo. Aug. 28, 2020) (noting since plaintiff failed to establish causation on its claim for strict liability, it also failed to establish causation on its negligence claim).

As discussed, Plaintiff's expert put forth three reasons why he believes the latch mechanism of the gate design was defective, and he also put forth Defendant's failure to differentiate the gate from the immobile portions of the railing.  But the undisputed evidence shows that repairs were made that necessarily mean the latch mechanism was, at the least, removed and reaffixed.  And Plaintiff's expert stated he did not know whether Plaintiff's fall would have occurred if the gate, hinges, latch plate, and latch pin were in the as designed and sold condition.  Nor could Plaintiff say what caused the gate to open.  In other words, neither Plaintiff nor his expert has offered evidence that "as a direct result of" any or all those three asserted defects that Plaintiff sustained damage.  Accordingly, Plaintiff cannot establish negligence on the theory of those three alleged defects.

But Plaintiff did put forward evidence regarding causation on Plaintiff's expert opinion that the gate was unsafe because it was not marked to differentiate it from the fixed railings. Doc. [41] ¶ 63.  Plaintiff testified that he would *not* have leaned against the gate "if he knew of its existence."  *Id.* ¶ 61; *accord* Doc. [35] at 14–15.  Missouri law has a rebuttable presumption that if a product provided adequate warning, then a user would have heeded the warning.  *Poage v. Crane Co.*, 523 S.W.3d 496, 512 (Mo. Ct. App. 2017).  Thus, as a direct result of Defendant's failure to distinguish or differentiate the gate—thereby making it appear like the fixed railings—Plaintiff fell and sustained injuries when it opened after he leaned against it.  As such, viewing the undisputed facts and the genuinely disputed facts in the light most favorable to the nonmoving party, Plaintiff's claim that Defendant was negligent through its failure to warn, see Doc. [1] ¶ 32(c)–(d), survives summary judgment.

**Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Exclude, Doc. [25], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, Doc. [22], is **GRANTED in part** and **DENIED in part**, consistent with this Memorandum and Order.

Dated this 31st day of March 2021.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE